# SACCO & FILLAS LLP

31-19 Newtown Ave., 7th Floor                                     Ph: 718-269-2207
Astoria, New York 11102                                  OAlvarado@SaccoFillas.com

March 15, 2024

**VIA ECF**

Hon. Sanker J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East Chambers 304N
Courtroom 13 C South
Brooklyn, New York 11201

      Re:        *Munoz v. Me Liquors Corp et al*
      CASE #:    1:22-cv-07209-MKB-SJB

Dear Judge Bulsara,

    This office represents Plaintiff Jeremias Munoz and together with Defendants' Counsel, we respectfully submit the instant request that the Court approve this settlement between Plaintiff Jeremias Munoz (hereinafter "Plaintiff") and Defendants in this wage and hour case.

## 1. Exhibits

    Ex. A – Settlement Agreement;
    Ex. B – Damages Calculation based on Complaint; and,
    Ex. C – Attorney's bill for fees and costs.

## 2. Procedural History

    This case was originally filed by Plaintiff on November 28, 2022, asserting claims against Defendants to recover unpaid minimum wage, overtime wages, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), as well as under the New York Labor Law § 190, et seq. ("NYLL", in addition to a spread of hours and unpaid gratuities claim under the NYLL. Plaintiff also sought liquidated damages, statutory damages, interest, and attorneys' fees and costs under the NYLL. On January 12, 2023, Defendants filed their Answer and Affirmative Defenses to the Complaint, denying all of Plaintiff's claims.

## 3. Factual Allegations

    According to the Complaint, Plaintiff worked at Defendants' liquor store from August 2021, to August 2022. ECF No. 1. Plaintiff's claims arise from allegations that he only received $275 a week in compensation, was not paid overtime for approximately 74.5 hours, was not paid an extra hour for working more than 10 hours a day, and was not compensated timely as required for manual workers under NYLL §191 *Id.* Additionally, Defendants did not provide the Plaintiffs required notices and statements during each pay period as required by the Wage Theft Prevention Act. *Id.* Finally, according to the Complaint, Defendant violated the New York Lanor Law in misappropriating tips given to Plaintiff. *Id.*

Defendants filed their Answer to the Complaint and affirmative defenses on January 12, 2023. ECF No. 10. Defendants denied that Plaintiff was ever their employee, or that any of the alleged actions took place. ECF No. 10.

Although Defendants continue to take the position that Plaintiff is not owed anything, all parties acknowledge that they face risks of not being able to prevail on some or all their claims and/or defenses if this case were to proceed to trial.

4.  **Settlement Agreement**

The Settlement Agreement, attached hereto as Exhibit A, requires Defendants to pay Seventy Thousand Dollars and Zero Cents ($70,000.00) ("Settlement Sum") to resolve the case, but without any admission of liability. After attorneys' fees and expenses, Plaintiff will receive $44,140.60 of the total Settlement Sum.

Pursuant to the Settlement Agreement, Defendants will pay the Settlement Sum in one installment of twenty-seven checks: nine check to Plaintiff for $2,452.26, less applicable all taxes and withholdings required by law for which an IRS Form W-2 will be issued to Plaintiff Parra; nine checks to Plaintiff for $2,452.26 by 1099; and nine checks to Sacco & Fillas LLP in the amount of $2,873.26 representing attorney's fees and costs. The twenty-seven checks are to be provided ten days after approval of the settlement, and are to be held in escrow until the appropriate Payment Due Date outlined in the Settlement Agreement. Exhibit A, ¶ 4.

In the event of default, all unpaid amounts of the $70,000.00 Settlement Sum are due immediately, with all Defendants severally and jointly responsible for aid unpaid sum. Exhibit A, ¶ 4.6.

The Agreement in this case contains a release by Plaintiff of wage-related claims under the FLSA , the NYLL, WTPA, and any other statutory or common law wage claims that arose on or prior to the Settlement Agreement. *See* Exhibit A ¶5.1.  The Defendants likewise release Plaintiff from any claims relating to the Action. *See Id* ¶ 5.2.  The release does not include any claims for workplace injuries or occupational exposure under worker's compensation or unemployment benefits, nor any claims which cannot be released by law. *See Id* ¶ 5.3.  This release is mutual, binding both Plaintiff and Defendants, similar to other claims approved by courts in this district.  *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (E.D.N.Y February 3, 2016) (Sullivan, D.J.) ("In the recent cases where courts have rejected settlements that included broad releases waiving non-FLSA claims against defendants, the releases were not mutual and protected only the defendants in the action.") Additionally, the release provisions are not the general releases rejected by *Cheeks* and courts thereafter, but excludes claims that cannot be released by law, and  any unemployment or workplace safety claims. See *Cheeks v Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (" …an overbroad release that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues..") Additionally, the release provision in ¶5.1 delineates only unpaid wages, overtime, or other compensations, with no mention of other types of claims.

Finally, the Agreement contains no non-disparagement or similar provision, allowing for the remedial purposes of the FLSA and NYLL to be in full effect and allowing for the free spread of information to other workers.

2

## 5. The Court Should Approve the Settlement of Plaintiff's FLSA Claims as Fair and Reasonable and Dismiss the Action with Prejudice

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. *Id.* "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.,* No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (*quoting Garcia v. Bae Cleaners Inc.,* No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> "(1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

As set forth more fully below, the Parties respectfully submit that this settlement is fair, reasonable, and the product of arm's length negotiations. For these reasons and those set forth in further detail below, the settlement should be approved. Therefore, the parties respectfully request that this Court finds that the settlement amount is fair and reasonable.

Lastly, the mutual releases in this Agreement are proper under *Cheeks*. The release in this agreement is unlike the general, sweeping releases that courts have usually denied, but instead both mutual and specifically only mentioned wage, overtime, and related compensation. See *Lola*, 2016 WL 922223, at *2. ("At least one court has explicitly stated that a mutual release of claims is acceptable because it "will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.")

### 5.1. Plaintiff's Estimate of the Full Anticipated Recovery if Plaintiff Had Received a Favorable Outcome at Trial

Plaintiff's Counsel calculates Plaintiff's highest possible damages to be $145,190.56 based on the allegations in the Complaint, not including attorney's fees and costs. See Exhibit B, Damage Calculations based on Complaint. The settlement amount of $70,000.00 is fair and reasonable in light of the numerous litigation risks discussed below. This is more than the amount of unpaid wages, spread of hours, and gratuities originally owed to him, and without the risk of the jury believing some or all of Defendants' defenses.

Plaintiff's total damages calculations include:

1. Total unpaid wages and overtime: $54,893.75
2. Liquidated damages on wages and overtime: $54,893.75
3. Prejudgment interest: $10,542.93
4. Postjudgment interest: $910.13
5. Tips Withheld: $4,500.00
6. Wage Theft Protection Act Damages: $10,000.00

After attorneys' fees and costs, Plaintiff will receive $44,140.62 for the release of his wage and hour claims.

### 5.2. Bona Fide Disputes and Other Issues that Support Accepting the Settlement Agreement

Defendants refute Plaintiff's claims of unpaid wages. Specifically, Defendants argue that Plaintiff was not an employee at all. If this litigation were to proceed and the Court or jury credited Defendants' testimony, then Plaintiff's damages would be significantly reduced, or even completely erased.

An important factor in settlement negotiations was the avoidance of litigation burdens and expenses. If this case were to proceed, it would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter. Realistically, if the litigation were to proceed, Plaintiff will not be able to recover more than the present negotiated amount.

Given the attendant risks of litigation, and the fact that he stands to receive more than what he would have received at trial, this settlement allows for Plaintiff to recover a significant amount without undergoing any risks at trial.

### 5.3. Description of Settlement Negotiations

Counsel engaged in extensive arm's length and vigorous negotiations on behalf of the Parties. The Parties' attorneys are competent and experienced in wage and hour matters.

Settlement of this matter required significant expenditure of time and effort, including various discussions with Plaintiff, mediation, a settlement conference, the creation and subsequent review and discussion of damage calculation spreadsheets, and the negotiation of the terms of the Agreement including the confession of judgment from all Defendants.

The extensive negotiations performed in this matter confirm that there was no collusion or fraud and that the Settlement Amount is the product of fair and reasonable negotiations.

### 5.4. Amount of Plaintiff's Attorney's Fees and the Basis for the Claimed Amount

In accordance with the retainer agreement with Plaintiff, Plaintiff's counsel requests 33.3% of the total settlement amount before reimbursements of costs, which amounts to $23,333.33 in fees. As for costs, the costs of this action are itemized in the Attorney Bill, attached hereto as

Exhibit C, amounting to $2,526.05 for the entirety of the case. See Exhibit C, Attorney Bill. This and the fee amounts to $25,859.38, an amount that is presumptively fair. *See Matter of Lawrence*, 24 N.Y.3d 320, 339 (2d Cir. 2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 NGG VMS, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); *Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037 at *8 (E.D.N.Y. April 27, 2016)("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund.") Furthermore, as the proposed attorneys' fees are "consistent with a commonly approved percentage, there are no opt-in plaintiffs, the case is not a [certified] collective action, and the attorney's fee award is based on an agreement between Plaintiff[s] and counsel," the fee should be approved as reasonable. *Alonso v. LE Bilboquet NY, LLC*, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017). The percentage method provides a powerful incentive to attorneys for plaintiffs in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation in an effort to build up a lodestar. See *Hyun*, 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. Mar. 24, 2016) ("[T]he Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate") (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)).

If the lodestar method were to be used based on the billing shown in Exhibit C, courts generally "apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved." *Puciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y June 26, 2017.) The most common multiplier used by courts in this circuit is doubling the lodestar, which they have found to be reasonable for FLSA settlements. *See e.g. Hall v. Prosource Techs.*, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016). As delineated in Exhibit C, Plaintiff's Counsel has fees in the amount $21,669.50. Using the multiplier results in a fee of $43,339.00, which is less than the fees required by the instant Settlement Agreement.

Our firm has worked on this matter without compensation of any kind to date and our fee has been wholly contingent upon the result achieved.

**5.5. Reasonableness of Fee Amounts**

Here, Plaintiff's Counsel's fee request is reasonable in light of the success in settling this matter. The time expended was necessary to obtain the results achieved. "The hourly rates used in making a fee aware should be 'what a reasonable, paying client would be willing to pay.'" *Mills v. Cap. One, N.A.*, No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015). "In determining a reasonable hourly rate, the court should not only consider the rates approved by other cases in the District, but should also consider any evidence offered by the parties." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 208-09 (2d. Cir. 2005). Unlike many other members of the FLSA Plaintiffs' Bar, Plaintiffs' Counsel regularly represents both employers and employees in wage and hour litigations. The firm's defense clients actually pay for the firm's legal services at each attorney's full hourly rate, which are the rates used to calculate the lodestar here. *Lora v. J.V. Car Wash, Ltd.*, No. 11CIV9010LLSAJP, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters.").

### 5.6. Plaintiff's Counsel's Qualifications

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." Guzman v. Joesons Auto Parts, No. 11 Civ. 4543, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. Id. (citations omitted).

Here, the $44,140.62 recovery is very substantial, taking into account Defendants' arguments and their effectiveness at trial.

Clifford Tucker, Esq., of Sacco & Fillas LLP has significant experience prosecuting, defending, and settling wage and hour actions and is well-versed in wage and hour law.

Clifford Tucker, Esq., is a trial attorney licensed in New York and New Jersey. He practices employment and personal injury law at the Law Office of Sacco & Fillas LLP. Mr. Tucker focuses on representing clients in matters related to minimum wage, overtime, spread-of-hours, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he handles discrimination and harassment actions, has provided representation for civil servants in administrative proceedings, and defended employers at the New York Department of Labor and arbitrated contractor disputes. Mr. Tucker serves clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, the New York City Commission on Human Rights, the New York State Department of Labor, and administrative proceedings. Mr. Tucker also represents clients who have been injured in accidents such as construction injuries, motor vehicle accidents, pedestrian knockdowns, and premise cases involving slips, trips, and falls. Mr. Tucker has taught Continuing Legal Education classes on case preparation, investigation, negotiation, and discovery. Mr. Tucker also taught the "Basic Wage & Hour Rules: Spotting Red Flags" Continuing Legal Education class at the Injured Workers Bar Association 2024 Winter CLE. Clifford Tucker, Esq., also wrote and published "Introduction to the Federal and New York State Wage and Hour Laws" at the IWBA. *See Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5 (S.D.N.Y. 2015) ($450 per hour for a senior law firm attorney in FLSA type cases); *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461 WHP JLC, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted,* No. 13CV461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) ("fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases"); *Almond v. PJ Far Rockaway, Inc.*, No. 1:15-CV-06792-FB-JO, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) ("attorney's fees , like other goods and services, increase in cost with inflation").

Oscar Alvarado, Esq., of Sacco and Fillas LLP has four years of experience prosecuting and settling wage and hour actions and is well-versed in wage and hour law. Mr. Alvarado represents clients in matters related to minimum wage, overtime, spread-of-hours, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he handles discrimination and harassment actions. Mr. Alvarado serves clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States

District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, and the New York City Commission on Human Rights.

## 6. Conclusion

For the foregoing reasons, the parties respectfully request that the Court grant the motion for approval. The settlement in this case is fair and reasonable and should be approved by the Court.

We thank the Court for the time and attention devoted to this matter.

                                                Respectfully submitted,

                                        By: _____*/s/ Oscar Alvarado*
                                                  Oscar Alvarado, Esq.,